UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LAKELAND ASPHALT CORP.,

        Plaintiff,

v.                                                                                    Case No. 1:10-CV-887

WESTFIELD INSURANCE CO.,                                     HON. GORDON J. QUIST

        Defendant.
_____/

## OPINION GRANTING SUMMARY JUDGMENT

This case involves a property insurance coverage dispute arising from the failure of an asphalt-dispensing silo. Defendant, Westfield Insurance Company ("Westfield"), filed a Motion for Summary Judgment. (Dkt. #20.) Plaintiff, Lakeland Asphalt Corporation ("Lakeland") filed a response to which Westfield replied. The parties dispute two issues. First, in addition to "wear and tear," did "weight" of the asphalt or some other factor cause the silo failure? If not, recovery is precluded. Second, if, and only if, an additional factor caused the failure, does the insurance policy in question permit recovery? Because no genuine issue of fact exists that the only proximate cause, in accordance with Michigan law, was "wear and tear" of the steel hopper, Westfield's Motion for Summary Judgment will be granted.

### I. BACKGROUND

Lakeland is an asphalt supplier which stores and distributes the asphalt it manufactures in two silos, one of which is the 200-ton capacity silo at issue ("the silo") manufactured in 1988. Lakeland purchased the silo in used condition in 1994. John Carr, one of Lakeland's owners, along with the used equipment salesman, inspected the silo prior to the purchase. In 1996, Lakeland

installed the silo at its place of business in Springfield, Michigan.  Lakeland also installed a truck scale located below the silo.  Thereafter, the silo had been used for every paving season from 1996 to 2008.

The silo is a 200-ton capacity cylinder with a discharge gate and safety gate at the bottom. (Def.'s Br. Ex. 5 (Dkt. #23-1).)  The "cone" or "hopper" is a funnel permanently welded to the bottom of the cylinder and comprises part of the silo.  At the bottom of the cone is a gate-type valve that restricts the flow of asphalt through a three-foot opening to allow the asphalt to drop into waiting trucks when the gate is opened.

The asphalt is comprised of hot oil, "liquid asphalt cements," and "aggregate."  Aggregate includes sand, gravel, crushed stone, slag, rock dust, and can include used asphalt pavement.  The materials are mixed and then transferred by conveyor belt to the top of the silo.  (Def.'s Br. Ex. 5 (Dkt. #23-1).)  Once the asphalt reaches the top of the silo, it drops off of the conveyor and into a "batcher" at the top of the silo.  Once the batcher reaches a certain capacity, it opens and drops the asphalt into the silo.

The silo was designed to hold up to 200 tons of asphalt.  The asphalt is funneled by gravity down through the cylinder to the cone of the silo.  The cone has an opening covered by a discharge and safety gate, which is attached to the bottom of the cone.  Through remote operation, asphalt is then dispensed into trucks that are parked on a scale located below the silo.  The gate is held open until the appropriate weight of asphalt is dispensed into the truck.

On August 14, 2008, a customer pulled a truck onto the scale below the silo to obtain a 10-ton load of asphalt.  At that time, the silo contained 198 tons of asphalt–below the original design capacity of 200 tons.  As the gate opened to dispense the load, the cone tore away from the bottom of the silo.  The cone along with the 198 tons of asphalt in the silo fell onto the truck and the scale

below.  On August 14, 2008, Lakeland submitted a Claim to Westfield for a "cone failure, asphalt fell on truck."

On October 6, 2008, based upon its investigation, Westfield sent a letter to Lakeland explaining the denial of Lakeland's claim.  Westfield identified the applicable policy provisions and stated:

> I am writing in follow-up to our conversation on September 30, 2008 regarding the above referenced claim for damage to your silo resulting from wear of the metal skin of the silo cone which resulted in damage to your motor truck scale.  Our investigation indicated that a collapse did not occur to your silo.
> ...
> Because the damage caused to your silo was from wear we must deny your claim as it is specifically excluded under your policy.

(Def.'s Br. Ex. 12 at 1, 8.)

Lakeland claims breach of contract for failure to pay its claim for damages "due to a silo collapse."  (Compl. ¶¶ 8, 10-18.)  Lakeland also seeks penalty interest under the Uniform Trade Practices Act.  *See* M.C.L. § 500.2001 *et. seq.*  (Compl. ¶¶ 19-24.)

## II.  PERTINENT POLICY PROVISIONS

The parties do not dispute the pertinent portions of the insurance policy.  The general coverage provision for "Building and Personal Property" states:

**A.      Coverage**

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Dkt. #20-2 at 55.)  Thus, coverage exists under the policy when two conditions are satisfied: 1) damage to "Covered Property"; and 2) resulting from any "Covered Cause of Loss."  The only issue is whether the condition of a "Covered Cause of Loss" was satisfied.

The "Causes of Loss - Special Form" explains what consists of a "Covered Cause of Loss."

3

**A.      Covered Causes of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:

**1.**      Excluded in Section **B**., Exclusions; or
**2.**      Limited in Section **C**., Limitations;
that follow

**B.      Exclusions**
. . . .
**2.**      We will not pay for loss or damage caused by or resulting from any of the following:
. . . .
**d.      (1)**      Wear and tear;
. . . .
**k.**      Collapse, except as provided below in the Additional Coverage for Collapse.

. . . .
**D.      Additional Coverage - Collapse**

The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in **D.1** through **D.5** below.
. . . .
**2.**      We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:
. . . .
**b.**      Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;
. . . .
**d.**      Weight of people or personal property;

(Dkt. #20-2 at 46-51.)

### III. ANALYSIS

Because this is a diversity case, this Court applies substantive state law.  *Fed-Mogul U.S. Asbestos Pers. Injury Trust v. Cont'l Cas. Co.*, --- F.3d ---, 2011 WL 2652232, at *2 (6th Cir. July 8, 2011).  The parties agree that Michigan law applies.  Interpretation of the policy language is a question of law. *Id.* at *2 (citations omitted).

In the absence of specific contractual language to the contrary, Michigan courts have long applied the "proximate cause" standard to determine if coverage was precluded by the occurrence of a particular event. *Berger v. Travelers Ins. Co.*, 379 Mich. 51, 53, 149 N.W.2d 441, 442 (1967); *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 579 (6th Cir. 2010); Couch on Ins. § 101:39 (stating that parties can "'contract out' of this general causation rule, as long as their agreement does not violate public policy"). Lakeland's insurance policy states that Westfield will not pay for loss or damage "caused by" or "resulting from" from specifically listed, excluded events. Because the exclusion provision at issue contains no contrary standard, the Court concludes that the excluded cause, in this case "wear and tear," must be the proximate cause of the loss to preclude recovery.

"[T]he question of proximate cause in insurance cases is generally held to be one for the trier of fact." *Mich. Sugar Co. v. Emp'rs Mut. Liab. Ins. Co. of Wis.*, 107 Mich. App. 9, 14, 308 N.W.2d 684, 686 (1981) (citing *Kangas v. New York Life Ins. Co.*, 223 Mich. 238, 244-45, 193 N.W. 867, 869 (1923)). In this case, however, there is no genuine issue of material fact that "wear and tear" proximately caused the loss. Moreover, Westfield has correctly pointed out the absence of evidence to establish a different or concurrent proximate cause besides "wear and tear." Thus, drawing all inferences in Lakeland's favor, a reasonable jury could not find for Lakeland.

Proximate cause is "that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred." *TMW Enters.*, 619 F.3d at 579 (citing *Mich. Sugar Co.*, 107 Mich. App. at 14, 308 N.W.2d at 686). The insurer bears the burden of proving that an exclusion to coverage is applicable. *Heniser*, 449 Mich. at 161 n.6, 534 N.W.2d at 505. Westfield has met this burden and Lakeland has not rebutted it.

Initially, Westfield has pointed out the absence of evidence to establish that "weight" of personal property proximately caused the injury. That is, no evidence exists that the cone hopper

5

could not support the weight of 198 tons of asphalt, had it not been for some other new, independent

cause.  Lakeland's own expert, Isaac Sheppard, testified that, up until the silo failure, the silo could

hold 200 tons of asphalt.  (Sheppard Dep. Def.'s Br. Ex. 6 at 13-14 (Dkt. #23-2 at 14-15).)  Thus,

taking all inferences in favor of Lakeland, up until the silo failure, the silo could hold 200 tons of

asphalt or less.  Also, the parties do not dispute that at the time of the incident, the silo contained 198

tons of asphalt.  Therefore, because the silo failed with 198 tons of asphalt in it, some other new

cause produced the silo failure.  (*See id.* at 14 (Dkt. #23-2 at 15).)  Consequently, as a matter of law,

the weight of the asphalt could not have been the "proximate cause" of the silo failure.  *See, TMW*

*Enters.*, 619 F.3d at 579 (citing *Mich. Sugar Co.*, 107 Mich. App. at 14, 308 N.W.2d at 686).

Most importantly, all of the experts who have produced evidence agree that "wear and tear"

of the cone is the only cause that was unbroken by any new, independent cause, without which the

silo failure would not have occurred.

- On August 20, 2008, Glen Leckie, a structural engineer retained by Westfield, visited

  Lakeland's work-site to inspect the cone along with other documents provided by

  Lakeland and performed measurements of the cone and silo.  Leckie concluded:

  > The silo hopper/cone was worn down by abrasive wear and tear
  > through use over time and on August 14, 2008 it failed because it was
  > worn to a point that the cone was so thin it could not hold the full
  > weight of the HMA in the silo.

  (Def.'s Br. Ex. 4 at 10 (Dkt. #22-3 at 12).)

- David Weaver, an investigator for Cincinnati Insurance Company, which insured the

  asphalt truck caught under the silo, opined that the failure of the cone was due to the

  long term wear and tear to the metal skin of the cone and silo.  (Def.'s Br. Ex. 9 ¶ 8

  (Dkt. #23-5 at 3).)   Mr. Weaver determined that the metal skin had lost

approximately 80% of its thickness as compared to the steel in other portions of the asphalt silo. (*Id.* ¶ 5.)

- Isaac Sheppard, Lakeland's expert, agreed that the strength of the steel cone hopper was reduced to the point where it was no longer capable of holding 198 tons of asphalt. (Sheppard Dep. Def.'s Br. Ex. 6 at 15 (Dkt. #23-2 at 16).) But for this reduction in strength due to wear and tear, Sheppard thought that the cone probably would not have failed on August 14, 2008. (*Id.* at 16 (Dkt. #23-2 at 17).)

For this same reason, the "Additional Coverage - Collapse" provision does not apply. To be considered a Covered Cause of Loss, a "collapse" must be "caused" by one or more of the enumerated factors. (Dkt. #20-2 at 51.) Because there is no contrary language in the provision to apply a different standard,[1] proximate cause is the appropriate standard to determine if one of the enumerated factors "caused" the collapse. As established above, contrary to Lakeland's contention, the "weight" of the asphalt was not, as a matter of law, a proximate cause of the silo failure.[2] *See, supra*, *TMW Enters.*, 619 F.3d at 579 (citing *Mich. Sugar Co.*, 107 Mich. App. at 14, 308 N.W.2d at 686). Isaac Sheppard's findings are insufficient to create a genuine issue of fact. His findings and testimony only establish that "weight" was a but-for cause, not a proximate cause. Lakeland

---

[1] Looking at the language of the agreement as a whole establishes that the parties consciously did not include language to the contrary. In a provision not relevant to this case, Westfield stated it would not pay for damaged caused "directly *or indirectly*" by certain events. (Dkt. #20-2 at 26 (emphasis added).) By including *indirect* causes, this provision excludes coverage of damage beyond that of damage caused by the proximate cause. No such language exists in the pertinent provisions for this case.

[2] Lakeland does not dispute Westfield's argument that "decay" was not a cause of the silo failure. Despite a conclusory statement by Isaac Sheppard, no evidence exists to suggest "decay" caused the silo failure. Moreover, this Court agrees with Westfield's argument. (*See* Sheppard Dep. Def.'s Br. at 27 (admitting that wear and tear of steel is not an organic process) with *Travelers Prop. of Am. v. Eyde Co.*, 2007 WL 107667, at *6 (W.D. Mich. Jan. 9, 2007) (interpreting "decay" to mean "not a general, gradual decline in strength, but rather, the organic rot or deterioration from a normal state").)

Nor does Lakeland dispute the inapplicability of the "Additional Coverage - Equipment Breakdown" policy provision.

has not come forth with any evidence for a jury to reasonably conclude otherwise.[3]  *See Celotex*,

477 U.S. at 323-24, 106 S. Ct. at 2553 ("One of the principal purposes of the summary judgment

rule is to isolate and dispose of factually unsupported claims or defenses . . . .").

## IV. CONCLUSION

Lakeland's insurance policy plainly and unambiguously excludes coverage.  Therefore,

Westfield's Motion for Summary Judgment (Dkt. #20) pursuant to Federal Rule of Civil Procedure

56 will be granted.

A separate Order will issue.


Dated:  February 2, 2012                                    /s/ Gordon J. Quist
                                                          GORDON J. QUIST
                                                 UNITED STATES DISTRICT JUDGE

---

[3] It is unnecessary to address Westfield's argument regarding "concurrent-causation."  That argument would need to be addressed only if this Court had found more than one cause of the silo failure.  Since: A) the policy provisions do not "contract out" of the "proximate cause" standard employed by Michigan courts; and B) no genuine issue of fact exists that the only proximate cause was "wear and tear," the Court need not delve into the analysis regarding concurrent causes–which necessarily implies more than one cause.